IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KENDAL RUTH RODDEN | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-884-P |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.  STATEMENT OF THE CASE**

Plaintiff Kendal Ruth Rodden ("Rodden") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Rodden protectively filed her application in April 2019, alleging that her disability began on January 6, 2017. (Transcript ("Tr.") 10; *see* Tr. 157–61.) After her application was denied initially and on reconsideration, Rodden requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 63-98, 106-17.) The ALJ held a hearing on November 5, 2020 and issued a decision on January 13, 2021 denying Rodden's application for benefits. (Tr. 10-23, 29-62.) On June 16, 2021, the Appeals Council denied Rodden's request for review, leaving the ALJ's January 13, 2021 decision as the final decision of

the Commissioner in Johnson's case. (Tr. 1–4.) Rodden subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416 (SSI). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work,

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(a)(4)(v).

considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* § 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Rodden presents the following issues:

1. Whether the ALJ failed to provide sufficient reasons for disagreeing with the medical opinions of record; and

2. Whether the ALJ erred in failing to include functional limitations in the residual functional capacity ("RFC") determination for Rodden's severe impairment of migraine headaches.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, 8-14.)

### IV. ALJ DECISION

In her January 13, 2021, decision, the ALJ found at Step One that Rodden had not engaged in substantial gainful activity since April 15, 2019, the date of Rodden's application for SSI benefits. (Tr. 12.) At Step Two, the ALJ concluded that Rodden had the following severe impairments: migraine headaches, gastroesophageal reflux disease ("GERD"), hypothyroidism, depression, anxiety, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), and bipolar disorder. (Tr. 12.) At Step Three, the ALJ found that Rodden did not suffer from an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 12-16.)

As to Rodden's RFC, the ALJ stated:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 416.967(b). The claimant could lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk, in combination, for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push or pull commensurate with lifting restrictions. The claimant has the inability to climb ladders, ropes, or scaffolds. The claimant is limited to indoor work and a temperature-controlled environment. She must avoid exposure to hazards such as unprotected heights, unguarded moving machinery, and extremes of heat. The claimant retains the ability to understand, remember, and carry out simple, repetitive, and routine tasks and instructions and make simple work-related decisions in an environment that involves few, if any workplace changes. The claimant can occasionally interact occasionally [sic] with supervisors, coworkers, and the general public.

(Tr. 16; *see* Tr. 16-22.) At Step Four, the ALJ found that Rodden had no past relevant work. (Tr. 22.) However, based upon the RFC determination and the testimony of a vocational expert ("VE"), the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Rodden could perform. (Tr. 22-23.) Consequently, the ALJ found that Rodden was not disabled. (Tr. 23.)

## V. DISCUSSION

### A. Medical Opinions in the Record

In her brief, Rodden argues that the ALJ erred in failing to provide sufficient reasons for disagreeing with the medical opinions of record. In support, Rodden claims that the ALJ incorrectly relied on the opinions of the State Agency Medical Consultants ("SAMCs"), who found that Rodden was moderately limited in her ability to (1) understand, remember, or apply information, (2) interact with others, (3) and concentrate, persist, or maintain pace, and was either mildly or moderately limited in her ability to adapt or manage herself.[2] (Pl.'s Br. at 6.) Rodden claims that the ALJ, in determining that Rodden was mildly limited in her ability to adapt or manage herself, appears to have relied on the SAMCs opinions and emphasized that Rodden could perform activities of daily living such as prepare simple meals, do laundry, perform light household chores, drive, and watch television. (Pl.'s Br. at 7.) Rodden argues that these activities of daily living, however, "do not appear to have any direct relationship to the criteria that is to be considered . . . in the category of 'adapting or managing one's self." (Pl.'s Br. at 7.) Rodden claims that "Courts have recognized the differences between activities of daily living and activities required in performance of work." (Pl.'s Br. at 8.)

---

[2] According to Rodden, "[a]t the initial determination level, the [SAMC] determined that Ms. Rodden was moderately limited with regard to her ability to adapt or manage herself, while at the reconsideration level, the [SAMC] found a mild limitation in this criterion (compare Tr. 68, 83)." (Pl.'s Br. at 6-7.)

5

Rodden further argues that the ALJ, instead, should have relied on treating and examining sources that provided evaluations of Rodden's abilities to engage in work-related activities, such as the evaluations of: (1) Britney Haymond, Rodden's physicians' assistant ("PA Haymond"); (2) Jennifer Lloyd, LPC ("Lloyd"); and (3) Lawrence Sloan, Ph.D. ("Dr. Sloan"), the psychological consultative examiner. (Pl.'s Br. at 8-10.) Specifically, Rodden states:

> The ALJ noted the opinions expressed by Dr. Sloan, the psychological consultative examiner; Ms. Lloyd, the licensed professional counselor; and Ms. Haymond, the treating physicians' assistant. The ALJ indicated that "not all of the treating sources provided specific limitations, nor were the opinions put in vocational terms[.]" The Plaintiff respectfully disagrees. There were specific definitions for the categories used by both Ms. Lloyd and Ms. Haymond in assessing the Plaintiff's ability to perform work-related activities. Further, Dr. Sloan, the Acting Commissioner's own consultative examiner, reported specific limitations with regard to understanding, remembering, and applying information and with regard to dealing with work stress, which could fall within the category of adapting or managing one's self in a work setting. Certainly, the specific limitations reported by these sources were more definite than the "mild" or "moderate" limitations reported by the State Agency medical consultants.
>
> The ALJ found that the opinions issued by the consultative psychological examiner and the treating providers "are not persuasive" while the opinions of the State Agency medical consultants were deemed to be persuasive. The ALJ rejected the opinions of Dr. Sloan and the treating sources because "they are not supported by the reported daily activities, which includes socializing, shopping, reading, some in-state travel[.]"
>
> Accordingly, the ALJ appears to be rejecting the opinions of both the psychological consultative examiner and the treating providers based upon the Plaintiff's limited ability to perform activities of daily living, rather than based upon an assessment of the Plaintiff's ability to perform activities in a work setting. As noted above, activities of daily living may have little to do with the ability to work. Further, by rejecting the opinions as to work-related activity expressed by Dr. Sloan and the treating sources, the ALJ appears to be substituting her own medical opinion for the opinions of mental health professionals. This Court [based on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), and its progeny] has stated that the ALJ oversteps her bounds when attempting to substitute her medical opinion for the medical opinion evidence of record.
>
> . . . .

> The Plaintiff has been prejudiced by the ALJ's failure to give due consideration to the medical opinions expressed by the examining psychologist and by the treatment sources, which are the only opinions in this record by mental health professionals who have actually examined or treated Ms. Rodden. . . .

(Pl.'s Br. at 10-12 (internal citations omitted).)

In her decision, the ALJ set forth her analysis of Rodden's mental impairments under "Paragraph B," finding that Rodden had a (1) moderate limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. (Tr. 13-14.) As to Rodden's ability to adapt or manage herself, the ALJ stated:

> In her Function Report, the claimant stated that she has no problems whatsoever completing all her own personal care independently. She is able to prepare simple meals, do laundry, perform light household chores, and go outside daily. She can drive, go out alone, shop in stores for groceries, read, watch television, sew, and count change. Ms. Rodden[, Rodden's mother,] stated that the claimant has no problems whatsoever completing all her own personal care independently. She is able to prepare simple meals, do laundry, perform light household chores, and go outside daily. She can drive, ride in a car, go out alone, shop in stores for groceries, read, watch television, sew, and count change. Dr. Sloan noted the claimant stated that she is able to meet most of her activities of daily living as long as she has the financial means. She averred that she could bathe herself, groom herself, dress herself, and feed herself. She stated she can effectively shop for food[ ] and can prepare food. She can wash clothes and clean her home. She has a driver's license, she understands how to pay bills, and she can manage her funds. She will occasionally go for a drive alone as she finds it to be calming. She occasionally will visit the cemetery. Therefore, the undersigned finds the claimant has no more than mild limitation in the ability to adapt or manage oneself.

(Tr. 15 (internal citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. § 416.920a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §

416.920a(b)(1); *Boyd*, 239 F.3d at 705. The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 416.920a(c). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 416.920a(c)(3). The functional area of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E.4.[3]

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705. The ALJ's written decision must incorporate pertinent findings and

---

[3] "Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. [The SSA does] not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E.4.

conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

Moreover, the determination of a plaintiff's RFC is "the sole responsibility of the ALJ," and an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); 20 C.F.R. § 404.1520c(a). However, the Fifth Circuit, in *Ripley*, found that remand for additional administrative proceedings is necessary where the "record includes a vast amount of medical evidence establishing" that the claimant has an impairment but "does not clearly establish . . . the effect [the claimant's] condition had on his ability to work." *Ripley*, 67 F.3d at 557. "[A]n ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of [the claimant's] claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). In other words, an "ALJ may not rely on his own unsupported opinion as to the limitations presented by the claimant's medical conditions." *Id.*

In this case, contrary to Rodden's claims, it is clear that the ALJ properly applied the special technique in analyzing Rodden's mental impairments and making the ultimate disability determination, including in finding that Rodden was only mildly limited in the paragraph B functional area of adapting or managing herself. In reaching her determinations throughout the decision, the ALJ thoroughly examined the evidence in the record, including Rodden's statements, the information in the record, the information and opinions of Dr. Sloan, PA Haymond, Lloyd and other doctors, and the opinions of the SAMCs. As noted above, as to the Paragraph B functional areas, one of the SAMCs specifically found that Rodden was mildly limited in her ability to adapt

9

or manage herself. (Tr. 15; *see* Tr. 83.) The ALJ found such opinion persuasive and such opinion provides substantial evidence to support the ALJ's decision as to this functional area.

Moreover, the definition of "adapt or manage oneself" is illustrated in the regulations by a variety of abilities, including setting realistic goals, making plans independently of others, the ability to maintain personal hygiene and attire appropriate to a work setting. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.4. The ability to perform certain activities of daily living, as noted by the ALJ, could reflect a parallel ability to perform the described abilities in the work place. In addition, the SSA does **not** require documentation of all the examples in any of the functional areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.4. Thus, the ALJ did not err in considering whether Rodden was able to meet most of her activities of daily living in evaluating Rodden's abilities in this functional area.

In addition, the ALJ did not violate the prohibition set forth in *Ripley* and its progeny by relying on her own unsupported opinion as to the limitations presented by Rodden's medical conditions. Instead, the ALJ relied on the evidence in the record in making her decisions at all steps of the disability determination, including the RFC determination. Once again, the SAMCs opinions, which the ALJ found persuasive, as well as the other evidence in the record, provides substantial evidence for the ALJ's determinations. Thus, the ALJ did not err, and remand is not required.

### A. Inclusion of Limitations from Migraine Headaches into RFC Determination

In her brief, Rodden also argues that the ALJ erred by failing to include limitations in the RFC determination for Rodden's severe impairment of migraine headaches. (Pl.'s Br. at 9.) Rodden states that she testified that she "experiences migraine episodes one to two times per week and that when she has a severe migraine she must go to bed and it takes 24 hours or more to relieve

the headache." (Pl.'s Br. at 13; *see* Tr. 46-47.) Rodden claims that, while the ALJ included hazard and environmental limitations into the RFC determination, "there is no indication that the Plaintiff is exposed to any of these environments or hazards in carrying out her daily life, yet, she continues to have migraine headaches." (Pl.'s Br. at 13.) Rodden assets that, consequently, "the limitations described in the ALJ's RFC determination have not been shown to have anything to do with an impairment which the ALJ deemed to be severe." (Pl.'s Br. at 13.)

As to Rodden's severe impairment of migraine headaches, the ALJ found that such headaches failed to meet or medically equal any of the sections in Listing 11.00, which deals with neurological disorders. (Tr. 13.) In addition, the ALJ stated:

> In terms of the claimant's alleged migraine headaches, GERD, and hypothyroidism. [sic] Since the claimant's application date and alleged onset of disability date, she has had no invasive treatment for her conditions. She has not been referred for specialty care and there is no evidence of end-organ damage. Further, the medical evidence of record contains no evidence that the claimant has presented to the emergency room for severe acute symptomatology.
>
> Physically, in combination with her nearly unrestricted activities of daily living, it is abundantly clear that the claimant's conditions are not nearly as incapacitating as what she alleges. By all indications, it appears that the claimant's condition is well controlled by nothing more than prescription medications and medication management. While the claimant's digestive and thyroid troubles are appreciable, their documentation did not indicate such severity as to preclude work. The undersigned understands the reflective/refractive synergistic effects of her several conditions; she has no somatic-related diagnoses. Ultimately, the undersigned is left with evidence preponderating toward the conclusion that, while the claimant has mentally and physically challenging conditions, they are not so debilitating as to forestall competitive employment. However, out of the abundance of caution, the undersigned has restricted the claimant to light work activity to accommodate her conditions. The undersigned does not find the claimant's conditions preclude the residual functional capacity found above.
>
> . . . .
>
> In sum the residual functional capacity stated above reflects the claimant's limitations due to his/her impairments. The medical records show that the claimant's migraine headaches, GERD, hypothyroidism, depression, anxiety, PTSD, ADHD, and bipolar disorder, in combination, limit her ability to perform

work related activity. Thus, after reviewing all of the medical evidence, the residual functional capacity limits the claimant to light work in order to reflect her limitations.

(Tr. 20, 22.)

RFC is what an individual can still do despite her limitations.[4] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not

---

[4] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making her decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, it is clear that the ALJ was aware of and specifically discussed Rodden's migraine headaches. The ALJ, after finding that Rodden suffered from severe migraine headaches at Step Two, did not specifically mention in the RFC determination a limitation associated with migraine headaches. An ALJ, however, does "not err solely because he finds an impairment severe at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Davis v. Comm'r of Soc. Sec.*, No. 4:20-cv-1117-O-BP, 2021 WL 363597, at *3 (N.D. Tex. Feb. 3, 2021) (internal quotations and citations omitted). In this case, the ALJ noted that Rodden has not had invasive treatment for her, *inter alia*, migraine headaches and has not been referred for specialty care. In addition, the ALJ stated that there was no evidence that Rodden had presented to the emergency room for "severe acute symptomatology" and that it appeared that Rodden's "condition is well controlled by nothing more than prescription medications and medication

management." (Tr. at 20.) The ALJ further noted that the RFC determination accurately reflected the claimant's limitations due to her impairments and that her combination of impairments, including her migraine headaches, limited her ability to perform work related activities. (Tr. 22.) Because substantial evidence supports the ALJ's RFC determination, there is no error.[6]

Moreover, to the extent there was any error, it would be harmless error as Rodden has failed to identify any evidence beyond her own speculation indicating how her migraine headaches actually resulted in any further limitations beyond those found by the ALJ in the RFC determination. *See Mayeux v. Comm'r of Soc. Sec. Admin.*, No. 16-755-EWD, 2018 WL 297588, at *7 (M.D. La. Jan. 4, 2018) ("Plaintiff has failed to identify any evidence [beyond her own speculation] to support a finding that her [severe] obesity actually resulted in limitations precluding sedentary work."). Consequently, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be **AFFIRMED**.

---

[6] Rodden, in her Reply brief cites to *Loudon v. Saul*, No. 3:20-CV-2060-N, 2022 WL 868278, at *10-11 (N.D. Tex. Mar. 7, 2022) in support of her argument that the ALJ improperly substituted her own medical judgment and failed to properly accommodate for the severe impairment of migraine headaches in the RFC determination. In *Loudon*, there was medical evidence in the record indicating the claimant had been treated for migraines on multiple occasions. *Id.* at *3-5. The ALJ in *Loudon* found that the claimant suffered from several severe impairments, including migraines. *Id.* at *7. In the RFC determination, the ALJ included limitations to account for Loudon's migraine headaches by prohibiting her from, *inter alia*, working around bright or flickering lights or outside in bright sunlight. *Id.* The Court, based on *Ripley* and its progeny, found that the ALJ's RFC determination was not supported by substantial evidence as there were "no medical opinions in the record regarding the effects that Plaintiff's migraines and light sensitivity had on her ability to work."

In this case, however, Rodden points to no medical evidence showing treatment for migraine headaches. According to the ALJ, Rodden has not received any invasive treatment for her migraines nor has she been referred for specialty care since her application date. (Tr. 20.) Thus, this case is distinguishable from *Loudon* in that there is no evidence indicating that Rodden's migraine headaches actually resulted in limitations that were not included in the RFC determination.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 9, 2022**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED August 26, 2022.

                                                JEFFREY L. CURETON
                                              UNITED STATES MAGISTRATE JUDGE